IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA M. ADETUNJI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:11CV157-SRW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Linda M. Adetunji brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits and for supplemental security income under the Social Security Act.[1] The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole

---

[1] On January 28, 2011, the Appeals Council denied review of the ALJ's decision on plaintiff's claims. (R. 1-5).

to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff's November 5, 2008, disability report identifies hypertension, headaches, hearing problems, and right foot pain as the "illnesses, injuries or conditions that limit [her] ability to work." (R. 148).[2] The report indicates that plaintiff completed "12th grade" in "1980" and did not attend special education classes. (R. 152).[3] A "function report" plaintiff

---

[2] The report, which was prepared on a computer, is undated. (R. 153). However, the Commissioner indicates that the form was completed on November 5, 2008 (see Court Transcript Index, Exhibit 3E), the same day that "C. Rogers" completed the Field Office Disability Report (R. 146).

[3] The form is unsigned and appears to have been filled out by a DDS staff member, as the "remarks" section of the form includes the statement, "Claimant has had multiple jobs. A 3369 is needed." (R. 153).

submitted three weeks thereafter[4] in support of her applications includes checkmarks indicating plaintiff's contention that her "illnesses, injuries, or conditions" affect her lifting, hearing, memory, completing tasks, concentration, understanding, and following instructions. (R. 173). She further indicates that she cannot pay attention for very long and that she does not follow written or spoken instructions well. (Id.). The "[r]emarks" section of the function report includes the following statement: "I have not comple[t]ed my Education. I do not have a high School Diploma I only went to school a[s] Far as the 9th grade Education." (R. 175). In the "[r]emarks" section of a "Disability Report – Appeal" completed on February 28, 2009,[5] plaintiff asserts, in part:

> [I]'ve only had about 3 jobs in my whole life which if I wasn't able to stay on. Due to my disability and mental status not been able to follow directions good, etc. Not being able to comple[te] a work task. I was in special ed in school. I did not graduate.

(R. 190). At the administrative hearing, plaintiff testified that she completed "[p]robably ninth grade" and that she was "in special education ever since elementary up until high school until [she] quit." (R. 41). She testified that she did not learn how to read in school and that someone helped her to complete the forms for her Social Security case. (Id.). She further testified that she cannot write well enough to complete a job application on her own, would not be able to determine whether she received the correct change in a purchase transaction,

---

[4] This exhibit is not dated, but a development summary worksheet indicates that DDS received it on November 26, 2008. (R. 175, 176).

[5] This form is also undated, but the Commissioner indicates a date of "2/28/2009" for the Exhibit. (See R. 191; Court Transcript Index, Exhibit 10E).

3

is "very bad with counting and math" and does not know "how to count that good at all," but that she is able to understand verbal instructions to some extent. (R. 42). Plaintiff stated that, in her job feeding and watering animals at the Tuskegee veterinary school, she had someone with her and did not work independently. (R. 30, 43).[6]

The record includes no evidence of mental evaluation or mental health treatment and very little evidence of other medical treatment. On June 16, 1996, plaintiff sought treatment at the East Alabama Medical Center emergency room after she "was assailed when a friend ran over her right foot with a pickup truck out in a field and gravel road." (R. 214). An x-ray revealed no fracture, but plaintiff had "very deep avulsion type gaping lacerations" in which there was "ground in grass, gravel, dirt and debris." (Id.) Plaintiff was admitted to the hospital for two and a half days, during which she received daily whirlpool treatments for cleansing of her wounds, and antibiotics. (R. 211-13). Plaintiff was next treated at the EAMC emergency room over six years later, in September 2002, after a "friend" attempted to rape her and then beat her with a piece of iron, fracturing her left zygomatic arch. Plaintiff was treated and released in "[g]ood" condition. (R. 36-38, 201-10). The next treatment of record occurred after another six year period when, on August 27, 2008, plaintiff sought treatment at the emergency room of Community Hospital in Tallassee for strep throat. (R. 251-55).

On March 15, 2009, plaintiff was treated in the Community Hospital emergency room for a urinary tract infection. (R. 256-60). On January 23, 2010, plaintiff sought treatment

---

[6] The court here summarizes only the portion of plaintiff's testimony relevant to her mental limitations.

from the East Alabama Medical Center emergency room for right foot pain. She reported that she fell, but "[would] not define it anymore than that" and stated that she had "been hurting in the mid foot area since that time." An x-ray was negative for any acute process and, on examination, the nurse practitioner noted no abnormalities other than "tenderness at the dorsal aspect in the mid foot." The nurse practitioner assessed "[r]ight foot contusion/sprain." He gave plaintiff a post-op shoe and crutches, medication for discomfort and instructions to ice and elevate her foot and follow-up with an orthopedist "if not improving." (R. 263-64). On December 2, 2008, plaintiff reported to Bartel Family Medicine Clinic in Dadeville for a consultative physical examination. (Exhibit 2F). Dr. Bartel's diagnoses included depression, general anxiety, insomnia, hypertension, cephalgia, vision/auditory deficits, dermatitis, cognitive decline, attention deficit, and right foot pain. (R. 224).

Plaintiff's school records (Exhibit 1E) demonstrate that plaintiff – who was born in the summer of 1968 – began first grade during the 1974-75 school year, and spent two years each in fifth grade and sixth grade after she failed to be promoted to the next grade. (R. 142-43). Plaintiff transferred from Lewis Adams Elementary School to E.O. Moore on April 14, 1983, and her record for eighth grade includes grades for only the first semester of the 1983-84 school year. (R. 133, 135).

The ALJ concluded that plaintiff suffers from a single severe impairment, "right foot pain." (R. 18). The ALJ rejected most of the impairments diagnosed by Dr. Bartel either as

not severe and/or not medically determinable impairments.[7] (R. 18-20). The ALJ did not acknowledge or address Dr. Bartel's diagnoses of "cognitive decline" and "attention deficit." (See R. 16-23).

## DISCUSSION

In her appeal to this court, plaintiff argues that the Commissioner's decision is due to be reversed because the ALJ failed to fulfill his duty to develop the record regarding plaintiff's mental limitations. (Plaintiff's brief, Doc. # 10, pp. 10-11).[8] She points to her testimony that she was in special education and attended school only until ninth grade, that she has difficulties reading and had help in completing her Social Security forms, that she could not complete a job application on her own and would have difficulty counting change. (Id., p. 10). She further notes her school records and argues that the ALJ appears to have ignored her school records altogether. (Id. at p. 10, n. 2). Plaintiff maintains that her school records indicate that she was "in the EMR or Educable MR program[.]" (Id. at p. 10).[9]

The Commissioner responds that plaintiff's testimony was insufficient to give rise to

---

[7] The ALJ concluded that plaintiff's low back pain, depression, anxiety, insomnia, headaches, and hearing and vision impairments are "not medically determinable impairments" (R. 19) and, also, that they are not "severe" impairments. (R. 18, 19). The ALJ found that, while plaintiff has hypertension and dermatitis, these are not "severe" impairments. (R. 19).

[8] Plaintiff further contends that the ALJ erred by relying on the Medical-Vocational guidelines ('the grids") to support his step five decision. (Plaintiff's brief, Doc. # 10, pp. 7-10).

[9] "EMR" is handwritten above plaintiff's name on the front of her education record. (R. 132). Other than this notation, the education record includes no indication that plaintiff was "in the EMR or Educable MR program." The education record includes plaintiff's results for standardized tests but no report of IQ testing. (See Exhibit 1E).

the need for a consultative examination, and explains – citing plaintiff's jobs as a cook, cook/cashier, and animal caretaker – that the record supports a conclusion that plaintiff retained the ability to perform basic work activities. (Commissioner's brief, Doc. # 11, pp. 9-10). The Commissioner further points to Dr. Bartel's observations that plaintiff was fully oriented, had intact recent and remote memory, attended church, could cook, had a boyfriend, and could live independently, and argues that the Commissioner "may present evidence of the claimant's daily life in determining whether a claimant has intellectual deficiencies." (Id., p. 10). He maintains that "no treatment provider indicated that Plaintiff had intellectual deficiencies" and that "[t]he absence of a medical opinion on the issue undermines Plaintiff's argument." (Id.). The Commissioner contends that "it was not until she requested review from the Appeals Council that she alleged any intellectual deficiencies" and argues that "[a]n ALJ is under no obligation to investigate a claim of inadequate mental functioning not presented in the application and not offered at the hearing as a basis for disability." (Id.).

The Commissioner's argument is problematic for a number of reasons: (1) while plaintiff did not allege inadequate mental functioning when she first filed her application, she alleged mental limitations in the function report she submitted to the Commissioner only three weeks later, and she continued to allege mental limitations throughout the remainder of the administrative proceedings, including at the administrative hearing (see summary at pp. 2-4, *supra*); (2) contrary to the Commissioner's argument, Dr. Bartel offered a "medical opinion on the issue" of whether plaintiff has intellectual deficiencies, diagnosing both

"cognitive decline" and "attention deficit"[10]; (3) while an ALJ may look to a claimant's daily activities to determine whether she has intellectual deficiencies, as the Commissioner argues, the ALJ in this case conducted no such analysis as to plaintiff's intellectual abilities;[11] and (4) while plaintiff's work history might demonstrate that she has the ability to perform basic mental work functions, the ALJ did not conduct this analysis either and, further, the plaintiff's ability to perform basic mental work functions does not necessarily exclude the possibility of work-related mental functional limitations.

In his decision, the ALJ did not acknowledge plaintiff's education records. He did not mention her testimony that she was in special education throughout school, that she had difficulty with reading and calculating, that someone helped her to complete the forms in support of her disability applications, and that she would not be able to complete a job application on her own.  In assessing plaintiff's credibility and determining her residual functional capacity, the ALJ considered only those "allegations that pertain to claimant's severe impairment" of right foot pain. (R. 20, last paragraph; see also R. 20-22). The ALJ's only analysis of plaintiff's education level occurred in the course of assessing her credibility as to her allegations of limitations arising from her foot pain. (Id.). The ALJ stated:

> Claimant alleges that she completed the twelfth grade in a disability report filled out in support of her application for benefits. (Exhibit 3E/6.)  Claimant

---

[10] While there may be good cause to reject these diagnoses, the ALJ did not – as noted above – acknowledge or discuss them.

[11] The ALJ cited plaintiff's limited daily activities in rejecting Dr. Bartel's diagnoses of depression, anxiety, and insomnia. (R. 19).

8

>  told the consultative examiner, however, that she completed only the 9th grade. (Exhibit 2F/2.) Claimant's inconsistent statements regarding her education level undermine her credibility regarding her limitations.

(R. 21).

The disability report cited by the ALJ – which, as noted above, appears to have been completed by the DDS interviewer – does, indeed, indicate that plaintiff completed 12th grade, and that she did so in 1980. (R. 152). This is inconsistent with plaintiff's statements and testimony that she quit school in the ninth grade. However, the disability report states, and the ALJ found, that plaintiff was born in mid-1968. (R. 22, Finding No. 7). Thus, the disability report upon which the ALJ relied indicates, on its face, that plaintiff completed the twelfth grade at the age of twelve. The ALJ did not mention the completion date of 1980, nor did he mention plaintiff's school record, which indicated that plaintiff was in the fifth grade (for the second time) in 1980. (R. 143). At the administrative hearing, the ALJ did not question plaintiff at all about her alleged limitations – physical or mental – and did not seek to clarify the discrepancy between the disability report and all of the other evidence plaintiff provided regarding her education level. (See R. 29-46). The ALJ's statement quoted above cannot be fairly understood to state any reason for rejecting plaintiff's allegations regarding attending special education classes, her limitations in reading, counting and performing mathematical calculations, or her difficulty in remembering instructions and completing tasks.

The court may "uphold a decision of less than ideal clarity if the agency's path may

reasonably be discerned," but it "may not supply a reasoned basis for [an] agency's action that the agency itself has not given[.]" Dixon v. Astrue, 312 Fed. Appx. 226, 229 (11th Cir. 2009)(citation omitted).  Plaintiff presented her own statements and testimony regarding her cognitive limitations, as well as school records evidencing her trouble progressing through grade school, her speech therapy, and her scores on standardized testing with results as low as the sixth and seventh percentiles nationally in reading and math, respectively, during fifth grade.  The Commissioner's consultative examiner diagnosed cognitive decline and attention deficit. At least as far as the court is able to tell from the ALJ's decision, the ALJ ignored this evidence; it appears that the Appeals Council did likewise. The Commissioner is not required to credit plaintiff's allegations of cognitive limitations.  He is, however, required to address them. Because he has failed to do so, his decision is due to be reversed.

Additionally, "[r]egardless of whether a claimant is represented by counsel, the ALJ 'has a duty to develop a full and fair record.'" George v. Astrue, 338 Fed. Appx. 803, 805 (11th Cir. 2009)(citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995)).  Remand is not required unless the administrative record as a whole is "inadequate or incomplete or 'show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.'" George, 338 Fed. Appx at 805 (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997)).  "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as

10

the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1269 (11th Cir. 2007)(citing Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)). The present record does not establish that plaintiff is entitled to a finding of disability, either before or after her date last insured.  However, particularly in the absence of any rationale by the ALJ suggesting otherwise, the court cannot conclude that the evidence of record was sufficient to permit the ALJ or the Appeals Council to make an informed decision about whether plaintiff suffers from cognitive limitations sufficient to erode the occupational base of jobs at the medium exertional level. Accordingly, this action is also due to be reversed and remanded for further development of the record on the issue of plaintiff's cognitive capabilities.[12]

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED and this action REMANDED to the Commissioner for further proceedings consistent with this opinion.  A separate judgment will be entered.

DONE, this 23rd day of April, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[12] Plaintiff also contends that the ALJ erred in relying on the Medical-Vocational rules ("the grids") to support his step five conclusion that plaintiff is not disabled.In view of the court's conclusion regarding the ALJ's and the Appeals Council's errors as to plaintiff's allegations of cognitive limitations, it is not necessary for the court to reach this argument.